IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT COOK, et al.          :          CIVIL ACTION
                             :
            v.               :
                             :
JOHN WETZEL, et al.          :          NO. 13-6575

MEMORANDUM

Bartle, J.                                    May 20, 2015

Plaintiffs Robert L. Cook, Jr., Darrick U. Hall, and
Shawnfatee Bridges, prisoners at the State Correctional
Institution at Graterford (SCI Graterford), bring this pro se
action under 42 U.S.C. § 1983 against numerous officials and
employees of the Pennsylvania Department of Corrections in their
official and individual capacities.[1]  Plaintiffs allege
violations of plaintiffs' constitutional rights to due process,
to equal protection, and to be free from cruel and unusual
punishment.  They further plead a conspiracy to deny their civil
rights under 42 U.S.C. §§ 1983 and 1985.

---

[1]  The defendants are John Wetzel, Secretary of the Pennsylvania
Department of Corrections, Graterford Superintendent Michael
Wenerowicz, Graterford Corrections Healthcare Administrator
Joseph Korszniak, Safety Manager James Misstishin, Department of
Corrections Chief Grievance Officer Dorina Varner, replacement
Chief Grievance Officer Tracey Williams, Unit Manager Joseph
Terra, and Corrections Officers Verosky, Shover, Taylor,
Bennett, Bolton, and Robinson.  Plaintiffs also seek recourse
against additional unknown Department of Corrections officers
and staff members.  We note that defendants Shaylor, Fix, and
McCown, misnamed in the original complaint as "McGowen," are not
named as defendants in the amended complaint.

Plaintiffs claim that they were restrained in handcuffs for several hours under false pretenses.  They further posit that certain of the defendants denied them access to a restroom while they were restrained and that their formal grievances were improperly investigated and denied.

Defendants have moved to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

I.

When deciding a motion to dismiss under Rule 12(b)(6) the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "mere possibility of misconduct."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  Under this standard, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

On a motion to dismiss for failure to state a claim, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

                                II.

The following facts are taken from the amended complaint and are construed for present purposes in the light most favorable to plaintiffs.  Plaintiffs are prisoners held on death row at SCI Graterford.  On October 2, 2012, plaintiffs Hall and Bridges were escorted at 6:30 a.m. to the Capital Case Law Library, where they were scheduled to remain until 9 a.m. The Law Library is a locked, secure room equipped with books, two desks, two computers, and a typewriter.

At 8:50 a.m., Hall and Bridges noticed that prison staff and Correctional Officers were running around frantically outside the Law Library.  When they asked nearby officers what was happening, they were told alternately that there was a fire or that a fire drill was underway.  Outside of the Law Library window, they noticed that a large number of Correctional

                                -3-

Officers were speeding down the road in vans accompanied by additional Correctional Officers in full gallop on horseback. All of the officers were dressed in full riot gear.

Five minutes later, two additional officers dressed in riot gear and bearing no insignia or identification approached the Law Library door.  Neither Hall nor Bridges recognized them.[2] The officers instructed the prisoners, who were the only inmates in the Law Library, to approach the door, turn around, and "cuff up" through the small "wicker" in the door.  They complied, and the officers bound their wrists behind their backs in non-adjustable, plastic flex cuffs.

Hall and Bridges assert that the cuffs were applied too tightly.  They asked the officer who put on the cuffs to loosen them but were met only with a "blank stare."  They had begun to suspect that the extraordinary circumstances at hand were not the result of a fire or fire drill since they had been present during an actual fire several years before during which Correctional Officers had conducted emergency procedures very differently.  At that time, inmates were evacuated to outdoor cages by firemen and Correctional Officers without any restraints until the fire was extinguished.

---

[2]  Plaintiffs later learned that the unknown officers were Correctional Officers from SCI Chester who had been called in to assist Graterford officers that day.

Hall and Bridges were kept in flex cuffs for approximately three-and-a-half hours.  During this time, numerous officials came by the Law Library, including defendants Bolton, Wenerowicz, Verosky, Shover, and Bennett.  None of them heeded plaintiffs' requests to loosen or remove the flex cuffs or to give them access to a restroom.  Hall and Bridges allege that their hands turned blue, they lost feeling in their hands and arms, they developed cuts and abrasions on their wrists, and Hall had an anxiety or asthma attack in the Law Library that went untreated.  They were eventually removed from their restraints at 12:17 p.m. and were returned to their cells at 2:47 p.m.  Their cells had been searched by canine teams before their return, and Correctional Officers later searched Hall's cell again in his presence.

At the same time that Hall and Bridges were restrained in the Law Library, plaintiff Cook alleges that he was placed in metal handcuffs in his cell by defendants Bennett and Robinson and taken outside to the "J-Block South Side 'Big Yard.'" According to Cook, it was raining and cold outside, but he was given no opportunity to obtain appropriate clothing.  The area had no shelter from the elements.  He was held outside for four hours, during which time his cell was searched.  Cook claims that he sustained injuries to his left wrist and right shoulder from being handcuffed for so long and scrapes and bruises from

-5-

falling with his hands bounds behind his back.  He also claims
to have suffered abdominal pain from being denied the use of a
restroom for several hours.

All three plaintiffs filed complaints in accordance
with the Department of Corrections' internal grievance
procedure.  All of their complaints were denied.  Plaintiffs
allege that defendants Wenerowicz, Terra, Varner, and Williams
gave their complaints only perfunctory review and offered
conflicting rationales for denying them.

III.

We first address the statutory requirements of 42
U.S.C. § 1983.  Section 1983 states in relevant part:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State ..., subjects, or causes
> to be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress.

While a state official sued in his or her individual capacity is
a "person" amenable to suit under § 1983, such an official is
not a "person" for § 1983 purposes when sued for money damages
in his or her official capacity.  Hafer v. Melo, 502 U.S. 21, 27
(1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 &
n.10 (1989).

In this matter, plaintiffs bring their claims against defendant Wetzel, Secretary of the Department of Corrections, in his official capacity only and against all other defendants in their official and individual capacities.[3]  They seek money damages against defendants Bolton, Wenerowicz, Verosky, Shover, Bennett, Terra, Varner, and additional unknown Correctional Officers.  They further seek a declaratory judgment against defendants Wenerowicz, Terra, and Varner that their responses to plaintiffs' formal grievances are not supported by the factual record or Department of Corrections policy.

Defendants are not subject to suit in their official capacities for monetary damages under § 1983.  Id.  To the extent plaintiffs seek such relief, they have failed to state a claim.[4]

IV.

We next turn to the contention of defendants in their individual capacities that plaintiffs have failed to state a claim upon which relief can be granted.  Plaintiffs allege that they were subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments when they were placed in

---

[3]  The Department of Corrections falls within the Executive Department of the Commonwealth of Pennsylvania.  71 Pa. Stat. Ann. § 61.

[4]  In light of this conclusion we need not address the position of defendants that the Eleventh Amendment to the United States Constitution bars these claims.

handcuffs for several hours and denied access to a restroom. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  The Eighth Amendment's ban on cruel and unusual punishment prohibits prison officials from using excessive physical force on prisoners. Whitley v. Albers, 475 U.S. 312, 327 (1986).  It also imposes a duty on those officials to provide humane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment.  See Robinson v. California, 370 U.S. 660 (1962).

Defendants construe the instant case as a conditions-of-confinement challenge.  The Supreme Court has reasoned, however, that "[m]any of the concerns underlying our holding in Whitley [which involved an excessive force claim] arise whenever guards use force to keep order."  Hudson v. McMillian, 503 U.S. 1, 6 (1992).  As the Court explained, "[w]hether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need to maintain or restore discipline through force against the risk of injury to inmates."  Id. at 6 (emphasis added) (internal quotation marks omitted).  According to the amended complaint, plaintiffs were told that a fire or fire drill was taking place at the prison.  The application of

-8-

handcuffs under these circumstances is properly analyzed under the excessive force standard, while the denial of the use of a restroom during that time period, which involved no force at all, is most appropriately analyzed as a conditions-of-confinement claim.

The central inquiry in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. To answer this question courts consider a number of factors, including:

> (1) the need for the application of force;
> (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotation marks omitted) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). De minimis uses of force do not offend the Eighth Amendment unless they are of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 10 (quoting Whitley, 475 U.S. at 327); Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).

In this case, the circumstances that plaintiffs have alleged to have occurred on the morning of October 2, 2012 were well out of the ordinary at SCI Graterford.  Plaintiffs were advised that a fire or a fire drill was taking place.  In a word, the routine at the prison was disrupted.  See Hudson, 503 U.S. at 6.  According to plaintiffs, "officers and staff [were] running around frantically," and riot teams, canine units, mounted Correctional Officers, and reinforcements from other facilities were present.  In this situation, Correctional Officers were tasked with overseeing plaintiffs who are inmates convicted of serious violent offenses and facing possible execution.

It is not unreasonable in the circumstances of a fire or even a fire drill or other disruption, when normal prison operations and procedures are in flux, to apply handcuffs, even tightly and for several hours, to some of the most dangerous inmates in the prison.  The amount of force alleged here in the use of handcuffs was not so out of proportion to the legitimate safety and security concerns the situation presented as could reasonably be said to be "repugnant to the conscience of mankind."  Hudson, 503 U.S. at 10.  Indeed, the injuries plaintiffs purport to have suffered are minor in the context of the Eighth Amendment.  See, e.g., Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002); Reyes v. Chinnici, 54 F. App'x 44 (3d Cir.

-10-

2002).  Taking the allegations in the amended complaint as true
as we must and evaluating them in accordance with all of the
factors set forth above, plaintiffs' excessive force allegations
fail to reach constitutional dimensions as a matter of law.

We turn to plaintiffs' claim that the lack of any
restroom break during their restraint was a condition of
confinement amounting to cruel and unusual punishment.  An
Eighth Amendment claim challenging the conditions of confinement
must allege that the deprivation is so serious that it results
in the "denial of the minimal civilized measure of life's
necessities" and that the deprivation came as a result of prison
officials' "deliberate indifference to inmate health or safety."
Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation
marks omitted).  This is no easy standard to meet.  "[E]xtreme
deprivations are required to make out a conditions-of-
confinement claim."  Hudson, 503 U.S. at 9.

As a general matter, the denial of access to a
lavatory has been held to offend the Eighth Amendment only where
it is unconscionably long or where it constitutes an ongoing
feature of an inmate's confinement.  See, e.g., Young v.
Quinlan, 960 F.2d 351 (3d Cir. 1992), superseded by statute,
Title VIII of Pub. L. No. 104-134, 100 Stat. 1321 (1996), as
recognized in Siluk v. Merwin, No. 11-3996, --- F.3d ---, 2015
WL 1600236, at *8 n.77 (3d Cir. Apr. 21, 2015).  "The

-11-

touchstone" in such a claim "is the health of the inmate." Id. at 364.  Denial of the use of restroom facilities reaches constitutional dimensions when it implicates the physical or psychological health of the inmate.  Id.

In Young, a prisoner was punished for flooding his cell by placing him in a "dry" cell that had no toilet or wash basin.  He was allowed only one bathroom break in four days and was forced to relieve himself in the corner of his cell.  He was given no toilet paper despite severe bouts of diarrhea and was not allowed to wash his hands before eating.  He was denied any water and was told instead to drink his own urine.  Reviewing the case at the summary judgment stage, our Court of Appeals held that these "revolting" and unsanitary conditions were sufficient to put the plaintiff's Eighth Amendment before a jury.  Id. at 365.

Plaintiffs' allegations do not come close to approaching the dehumanizing level of deprivation at issue in Young, nor do they otherwise reflect such danger to plaintiffs' health, dignity, or hygiene as to rise to the level of an Eighth Amendment violation.  Id.; see also Stewart v. Varano, No. 12-4539, --- F. App'x ---, 2015 WL 509475, at *2 (3d Cir. Feb. 9, 2015); Locke v. Sobina, Civil Action No. 10-66, 2011 WL 841368, at *6 (W.D. Pa. Mar. 8, 2011).  At no time during the eight hours that plaintiffs were allegedly denied the use of a

restroom did they face any dehumanizing, unhealthy, or
unsanitary condition.  Their bare allegation that holding their
urine "caused ... damage to their bladders" is implausible.
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp.
v. Twombly, 550 U.S. 544, 570 (2007).  Without more, the
circumstances alleged here do not implicate the Eighth
Amendment.  Plaintiffs' claims of cruel and unusual punishment
based on unconstitutional conditions of confinement will be
dismissed.

       We pause to note that plaintiffs appear to challenge
the application of handcuffs and denial of a restroom as
substantive due process violations as well.  The Due Process
Clause of the Fourteenth Amendment provides that no state shall
"deprive any person of life, liberty, or property, without due
process of law."  U.S. Const. amend. XIV, § 1.  When there is "an
explicit textual source of constitutional protection," however,
"that Amendment, not the more generalized notion of 'substantive
due process,' must be the guide for analyzing these claims."
Graham v. Connor, 490 U.S. 386, 395 (1989).  Plaintiffs' claims
are appropriately analyzed under the explicit prohibition on
cruel and unusual punishment of the Eighth Amendment.  Any
claims to substantive due process are therefore without merit.

       Plaintiffs have also asserted that defendants violated
their right to procedural due process by failing properly to

-13-

address the formal grievances they filed after the incidents of
October 2, 2012.  However, the miscarriage of prison grievance
procedures does not itself violate any due process right.  See
Thompson v. Pitkins, 514 F. App'x 88, 89-90 (3d Cir. 2013); Hoover
v. Watson, 886 F. Supp. 410, 418 (D. Del.), aff'd 74 F.3d 1226 (3d
Cir. 1995).  Indeed, several other circuits have held that there is
no constitutional right to such procedures at all.  See, e.g.,
Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001); Adams v. Rice,
40 F.3d 72, 75 (4th Cir. 1994).  The "alleged misapplication of
these procedures is not independently actionable." Pitkins, 514 F.
App'x at 90.  Plaintiffs' due process claim that defendants failed
properly to address their grievances will be dismissed.

        We still have before us plaintiffs' claims to equal
protection.  The Equal Protection Clause of the Fourteenth
Amendment prohibits any state from "deny[ing] to any person
within its jurisdiction the equal protection of the laws."  U.S.
Const. amend. XIV, § 1.  At its core, the Equal Protection
Clause directs that all persons similarly situated will be
similarly treated under the law.  City of Cleburne v. Cleburne
Living Ctr., 473 U.S. 432, 439 (1985).  In the present matter,
other than a passing reference to equal protection in the
amended complaint, plaintiffs have pleaded no facts, nor have
they made any argument, that they were treated differently than

-14-

any similarly situated prisoner.  Accordingly, any claims of
plaintiffs to equal protection will be dismissed.

        Finally, plaintiffs claim that defendants conspired to
deprive them of equal protection of the law in violation of 42
U.S.C. §§ 1983 and 1985.  A plaintiff must plausibly allege the
existence of a conspiracy between two or more persons to state
such a claim under either section of the statute.  <u>See</u> <u>Griffin</u>
<u>v. Breckenridge</u>, 403 U.S. 88, 102 (1971); <u>Parkway Garage, Inc.</u>
<u>v. City of Phila.</u>, 5 F.3d 685, 700 (3d Cir. 1993), <u>abrogated in</u>
<u>part on other grounds by</u> <u>United Artists Theatre Circuit, Inc. v.</u>
<u>Twp. of Warrington</u>, 316 F.3d 392 (3d Cir. 2003).  Plaintiffs
make no such allegation here.  They simply urge in a general
fashion that defendants Wenerowicz, Terra, and Varner improperly
handled plaintiffs' grievance requests and that defendants used
a fire drill as a ruse to search plaintiffs' cells.  Plaintiffs
fail to state a conspiracy claim.

                                V.

        In sum, plaintiffs fail to state any claim upon which
relief can be granted.[5]  Accordingly the motion of defendants to
dismiss the amended complaint will be granted.

---

[5]  In light of this conclusion, we need not address defendants'
position that the amended complaint does not properly
incorporate the allegations of plaintiff Cook.